IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN MAGEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-01726-G-BT |
| | § | |
| NIKE INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* trademark infringement case is Defendant Nike Inc.'s (Nike) Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 84). The District Court referred this case to the United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Order (ECF No. 6). For the reasons stated, the District Court should GRANT Nike's Motion and DISMISS Magee's claims with prejudice.

**Background**

In his Amended Complaint, which is his live pleading, Plaintiff Steven Magee states that—in 2015—he registered the trademark "HOOPLIFE," and that he has used the trademark in commerce since 2015. Am. Compl. 2 (ECF No. 82). Magee allegedly owns the rights to display the "HOOPLIFE" mark in any font, style, and color so long as the spelling is accurate. Am. Compl. 2.

1

In or around September 2020, Magee allegedly discovered that Hooplife Basketball Academy, LLC (HLBA), an Arkansas-based entity, was using the "HOOPLIFE" mark on various clothing items to promote their basketball training academy. Am. Compl. 8, 23-30. Magee alleges that Nike provided apparel to HLBA, and then HLBA customized and distributed the products, bearing the "HOOPLIFE" mark, to buyers at basketball games and online.[1] Am. Compl. 8.

Also, in 2021, Magee learned that BSN Sports, LLC (BSN Sports)—a Nike Retailer and Nike Team Dealer—operated an online "Sideline Store" which sold apparel and other sportswear bearing the "HOOPLIFE" mark. Am. Compl. 5-6. BSN Sports's website was tailored to numerous entities, like HLBA, and gave users the ability to "CHOOSE YOUR DESIGN," which included uploading logos like HLBA's branding of "HOOPLIFE NATION" and "HOOPLIFE STRONG." Am. Compl. 23-30. BSN Sports allegedly operated the website in conjunction with HLBA, and used "HOOPLIFE" to market goods, including large graphics and banners with "Hooplife Gear" and "Hooplife Apparel" to direct users of BSN Sports's website. Am. Compl. 6-7, 10.

On July 26, 2021, Magee sued HLBA, BSN Sports, Nike, and other individuals, generally alleging (i) trademark infringement, (ii) contributory trademark infringement, (iii) false designation of origin, and (iv) common law

---

[1] Magee's Amended Complaint merges many different allegations of conduct between the parties. The Court attempts to untangle his allegations as accurately as possible.

trademark infringement. Magee states the infringing activities were willful, intentional, and deceptive, and thus he seeks an injunction prohibiting the use of the "HOOPLIFE" mark, an accounting of profits from the "HOOPLIFE" mark, and related punitive damages. Am. Compl. 16-18.

On August 26, 2022, the Court dismissed claims against HLBA and various individuals due to a lack of personal jurisdiction over these Arkansas-based parties and terminated them from the case. Partial J. 1 (ECF No. 79). Further, on December 12, 2022, Magee and BSN Sports filed a joint stipulation of dismissal with prejudice as to all claims. Joint Stip. Dismissal 1 (ECF No. 99). Thus, Nike is the only Defendant remaining in this case.

Succinctly stated, Magee alleges that "infringing Nike 'Hooplife' Apparel (approximately over 30+ infringing 'Hooplife' apparel products) w[as] available for purchase on the authorized Nike Retailer and Nike Team Dealer's website." Am. Compl. 9-10. He alleges that Nike repeatedly and willfully engaged in direct trademark infringement of the "HOOPLIFE" mark. Am. Compl. 8-12. He also alleges that Nike provided apparel to HLBA and BSN Sports knowing that these entities were committing trademark infringement. Am. Compl. 12-13.

Nike filed its Motion to Dismiss all of Magee's claims. Mot. Dismiss (ECF No. 84). Magee timely filed his Response and Objection to the Motion, Resp. (ECF No. 91), and Nike filed its Reply, Reply (ECF No. 94). Thus, the Motion is ripe and ready for determination.

## Legal Standard

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of

showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

## Analysis

A. <u>Preliminary Matters</u>

In its Reply, Nike objects to much of Magee's Response, stating that the "opposition brief is replete with unpled allegations and speculative conclusions concerning Nike and BSN [Sports]'s purported relationship with various non-parties." Reply 6. Indeed, Magee includes numerous, new unpleaded facts and news articles apparently in support of his position on trademark infringement and contributory infringement. Resp. 3-13. But even *pro se* plaintiffs must abide by the Federal Rules of Civil Procedure, and a court may not consider new allegations in a response to a motion. *Energy Coal v. CITGO Petroleum Corp.*, 836 F. 3d 457, 462 n.4 (5th Cir. 2016) (citing *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)).

While Magee did not ask to amend his complaint, *pro se* plaintiffs' new factual allegations ordinarily are construed as a motion for leave to amend the complaint. *Garrett v. BBVA Compass Bank*, 2020 WL 3065938, at *4 n.6 (N.D. Tex. May 22, 2020) (noting that the liberal construction for leave to amend "is particularly true where . . . the litigant is *pro se* and has not yet made any amendments to [their] complaint"). Federal Rule of Civil Procedure 15(a) requires that leave to amend be granted freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). To be clear, leave to amend is not automatic, *Jones v. Robinson Prop*

5

*Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2006) (citation omitted), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981) (citations omitted). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the party of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994 (citing *Dussouy*, 660 F.2d at 598).

Here, the Court previously granted Magee the opportunity to amend, and he has filed a "More Definite Statement of Claims" and at least two amended complaints. *See* ECF Nos. 75, 76, 82. In each submission, Magee conflates acts of alleged misconduct by various Defendants, blurring the claims together in an attempt to state a claim against Nike. *See* FCR (ECF No. 73). His response seeks to add a number of new allegations, including that of a partnership between BSN Sports and Nike and the content of conversations Magee allegedly had with Nike representatives. Resp. 4-8, 13. He also includes references to several previously undisclosed news articles that highlight BSN Sports's Sideline Store offering customizable Nike apparel.

Magee has had ample opportunity to plead his best case, and an amendment at this juncture would cause undue delay in a case which has been pending since

August 2021 and where discovery closed in June 2022. Sch. Order (ECF No. 35).The haphazard manner in which Magee continues to plead his claims subjects Nike to continued unfocused litigation. An amendment would also prejudice Nike by requiring them to file another motion to dismiss. *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (Fitzwater, J.)) ("The court may deny leave to amend . . . if the defects are incurable or the plaintiffs have already alleged their best case."). Thus, the Court would deny any motion for leave to amend.

The additional factual allegations in Magee's response are not properly before the Court, and the Court does not consider the new factual matter outside the complaint in its analysis of Nike's Motion.

### B. Direct Infringement and False Designation of Origin

Nike first moves to dismiss Magee's claims for direct infringement—under both the Lanham Act and Texas common law—and false designation of origin. Br. Mot. Dismiss 12-23 (ECF No. 85). Nike asserts that Magee failed to allege that Nike used the "HOOPLIFE" trademark in commerce and that any infringing conduct by other parties cannot be imputed to Nike. Br. Mot. Dismiss 12-21. Magee responds that Nike is "attempt[ing] to deceive the court and disconnect themselves from BSN Sports," and that Nike is "very involved in what is a very large program and partnership with BSN Sports through the Sideline Store Program." Resp. 2-3.

7

Magee's claims of trademark infringement are governed by the Lanham Act, 15 U.S.C. § 1051 *et seq.* To prevail on these claims, Magee must show (1) that he owns a legally protectable mark and (2) that Nike's use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship. *See Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018); 15 U.S.C. § 1114(1)(a) (creating a cause of action for any "use in commerce" of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion"). The standards for analyzing trademark infringement under the Lanham Act, trademark infringement under Texas common law, and false designation of origin are identical. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied)) ("A trademark infringement . . . action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"); *VPI Holding Co. v. Success Res. USA LLC*, 2014 WL 12584331, at *3 (N.D. Tex. Dec. 2, 2014) (Godbey, J.) ("[T]he elements of trademark infringement and false designation of origin are identical, and the same evidence will establish both claims.").

"Claims for trademark counterfeiting, trademark infringement, and false designation . . . require the plaintiff to establish commercial use of its mark."

8

*Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 712 (N.D. Tex. 2018). "When defining commercial use in commerce, courts have examined several different aspects of the defendant's use." *TMI, Inc. v. Maxwell*, 368 F.3d 433, 437 (5th Cir. 2004). Aligning with the Ninth Circuit's definition, the Fifth Circuit has held that use in commerce "refers to a use of a famous and distinctive mark to sell goods other than those produced or authorized by the mark's owner." *Id.* (citing *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275 (5th Cir. 2002)).

  Magee fails to allege that Nike used the "HOOPLIFE" mark to sell goods—a fatal defect in his direct infringement claims. As Nike points out, "[a]t no point in the [First Amended Complaint] . . . does Plaintiff plausibly allege that the 'Hooplife'-embellished products used or sold by [Hooplife Basketball Academy] and BSN [Sports] originated with Nike in their embellished form or that Nike otherwise used Plaintiff's asserted mark." Br. Mot. Dismiss 14. Magee makes vague assertions—lacking any specific factual support—that Nike "used" the "HOOPLIFE" mark in commerce. Magee's allegations include that BSN Sports launched the Sideline Store, Am. Compl. 9, that Nike "provid[ed] customized and/or blank apparel to an entity who calls themselves "Hooplife," Am. Compl. 9, and that infringing goods were on a "Nike Retailer's website," Am. Compl. 15. These allegations demonstrate that the crux of Magee's trademark infringement claims is his allegation that "Nike continued to willfully provide apparel" to apparent infringers who then customized the apparel with the "HOOPLIFE" mark. Am. Compl. 9. Significantly, however, he never alleges that Nike itself ever engaged

9

in infringing behavior. Thus, Nike's motion to dismiss should be granted on Magee's claims for direct infringement and false designation of origin.

### C. Secondary Liability

"[L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Master Saddles Inc.*, 2021 WL 1814697, at *9 (quoting *Inwood Laby's, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 853-54 (1982)). There are two theories of secondary liability for trademark infringement: "vicarious liab[ility] based on agency principles," and contributory infringement. *Phoenix Ent. Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 797 (S.D. Tex. Mar. 28, 2017). [2]

---

[2] Various lower courts have endorsed different approaches to secondary liability—specifically vicarious liability—for trademark infringement. Some courts have found that vicarious liability may exist in the trademark context based on ability to supervise and financial interest, but others have rejected this contention. *Compare Master Saddles Inc. v. Taylor*, 2021 WL 1814697, at *9 (N.D. Tex. May 6, 2021) (Boyle, J.) ("One may be held vicariously liable for an infringing activity . . . if he has the right and ability to supervise the activity and also has a direct financial interest in it."), *and Cenorin, LLC v. Tacy Med., Inc.*, 2013 WL 1194473, at *3 (N.D. Tex. Mar. 25, 2013) (Lindsay, J.) (same), *with Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 614 (S.D. Tex. May 9, 2012) ("[C]ourts do not recognize vicarious liability in the trademark context based on ability to supervise in combination with a financial interest." (quoting *United States v. Wash. Mint, LLC*, 115 F. Supp. 2d 1089, 1106 (D. Minn. 2000)), *and Phoenix Ent. Partners v. Olivas*, 2017 WL 749072, at *2 (N.D. Tex. Feb. 27, 2017) (Lynn, C.J.) ("[C]ourts do not recognize vicarious liability in the trademark context based on ability to supervise in combination with a financial interest."). The Supreme Court has discussed the limits of "vicarious liability" in the *copyright* context—noting key differences between copyright and trademark law—and also found that such trademark infringement liability is properly determined under the contributory infringement standard set forth in *Inwood Laboratories v. Ives Laboratories*. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984). While Magee labels his claim as one for "contributory infringement," he also

10

### *i. Magee fails to allege any claim for vicarious liability.*

Magee appears to allege that Nike should be held vicariously liable for any trademark infringement by BSN Sports or HLBA. Nike moves to dismiss these claims, arguing that Magee cannot plead "any plausible, non-speculative facts to support a cognizable theory under which Nike may be held responsible for [BSN Sports's] conduct." Br. Mot. Dismiss 19; *see* Reply 13.

Vicarious liability for trademark infringement requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Phoenix Ent. Partners*, 2017 WL 749072, at *2 (quoting *Clearline Techs., Ltd.*, 871 F. Supp. 2d 607, 613 (S.D. Tex. 2012)). When reviewing whether an agency relationship exists, courts "reference [ ] traditional vicarious liability rules" and "look[ ] to the Restatement (Second) of Agency [ ] in determining those rules. *Michael Kors, L.L.C. v. Hernandez Int'l Inc.*, 2016 WL 6306129, at *23 (S.D. Tex. Oct. 27, 2016). "[V]ague, puffery-like references to a 'partnership'" between entities are insufficient to support vicarious

---

attempts to allege an agency relationship exists to hold Nike vicariously liable for BSN Sports's alleged infringing conduct because, he states, BSN Sports was an authorized Nike dealer. Am. Compl. 3, 12-13. Magee does not make any argument that Nike had the ability to supervise another's conduct combined with a financial interest. Therefore, the Court should limit its analysis of any alleged secondary liability to (1) vicarious liability, based on any purported agency relationship, and (2) contributory infringement.

11

liability. *Clearline Techs. Ltd*, 871 F. Supp. 2d at 614 (quoting *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010)).

Magee fails to sufficiently allege any agency relationship between a direct infringer and Nike to support a claim for vicarious trademark infringement. Throughout his Complaint, Magee states that BSN Sports was a "Nike Authorized Retailer" or "Nike Team Dealer," without any allegations of representations Nike controlled or had the authority to control the actions of the alleged infringers, HLBA or BSN Sports. Am. Compl. 3, 6, 9, 10, 12. Magee's assertion of a "partnership"—devoid of any reference to authority, representations, control, or supervision—merely recites the elements required for vicarious liability. Resp. 3. Magee maintains that "Nike continued to willfully provide apparel" to alleged infringers, with no support that Nike purported to approve of usage of the "HOOPLIFE" mark. Am. Compl. 9.

Magee, in other parts of his Complaint, notes that the Sideline Store is "owned and operated by BSN Sports, LLC." Am. Compl. 6. Magee himself alleges that BSN Sports acted independently regarding any infringing behavior, and Magee does not provide any factual basis to support a plausible allegation that Nike could control the actions of or contractually bind BSN Sports into infringement. Because Magee's formulaic and conclusory allegations do not support a claim for vicarious liability, Nike's motion to dismiss on this ground should be granted.

> *ii. Magee fails to allege a claim for contributory infringement.*

Nike also moves to dismiss Magee's claims for contributory infringement. Am. Compl. 12. Nike asserts that Magee fails to allege direct infringement by any entity or knowledge of any third-party infringement such that Nike would be contributorily liable. Br. Mot. Dismiss 23-27. Magee states that there was an understanding or partnership between BSN Sports and Nike, and Nike should have known about HLBA or BSN Sports's alleged infringing conduct. Resp. 9-10, 14.

"A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes, or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). More relatedly to a supplier relationship, a party contributorily infringes on a trademark if it "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 828 (5th Cir. 1998) (quoting *Inwood Lab'ys, Inc.*, 456 U.S. at 853-54). To prevail on any contributory infringement claim, there must be "the existence of an act of direct infringement." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *15 (N.D. Tex. Sept. 25, 2009) (citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993)). Thus, if a supplier knows or has reason to know that a buyer or affiliate is directly infringing on a trademark and does not "make reasonable efforts to stop the practice," it may be held liable for contributory infringement. *Eclipse Aesthetics LLC v. Regenlab USA,*

*LLC*, 2016 WL 4207993, at *3 (N.D. Tex. Aug. 10, 2016) (citing *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1252 (10th Cir. 2013)).

Even giving Magee's complaint all the deference due a *pro se* pleading, Magee fails to state a claim for contributory infringement related to HLBA's alleged direct infringement. Specifically, Magee fails to allege that Nike, with knowledge of potential infringement by HLBA, continued to supply goods to HLBA. Although Magee states that he called Nike in September 2020 to inform them of HLBA's conduct, Am. Compl. 9, he fails to allege sufficient facts to show that Nike supplied HLBA after obtaining such knowledge. Magee's conclusory allegation that "Nike continued to willfully provide apparel to [HLBA] in the Spring of 2021" is only corroborated by a screenshot of *the HLBA store* selling "HOOPLIFE"-branded Nike apparel. Am. Compl. 29. No part of the complaint relates to when or under what circumstances Nike supplied any apparel to HLBA. Indeed, Magee fails to plausibly allege that Nike ever provided any goods to HLBA. Magee also states that Nike knew about a trademark application for "HOOPLIFE" branding, but the application was filed by HLBA, and Nike did not have any role in that application. Am. Compl. 8-9. The facts alleged fail to address the key element of whether Nike supplied apparel after being made aware of HLBA's alleged infringement. Magee leaves the Court to speculate about whether Nike supplied apparel to HLBA after it knew or should have known about HLBA's alleged infringing conduct.

As to Magee's contributory infringement claims related to any of BSN Sports's alleged infringing conduct, Magee's claim also fails. As a prerequisite to

any contributory infringement claim, Magee adequately alleges that BSN Sports directly infringed on the trademark by using the "HOOPLIFE" mark in commerce and that there was a likelihood of confusion due to the similarities between Magee's mark and BSN Sport's usage of "HOOPLIFE" on their apparel. Am. Compl. 3-5. But Magee fails to allege that Nike "kn[e]w or ha[d] reason to know" that BSN Sports engaged in the trademark infringement. *See Rolex Watch USA, Inc.*, 158 F.3d at 828. Magee's bald assertions about Nike's knowledge of BSN Sports's alleged infringement again recites the elements necessary to prove contributory infringement. Am. Compl. 12-13. He provides no explanation to plausibly show that Nike would know of any potential infringing activity by BSN Sports, and Nike is under no duty to seek out and prevent alleged trademark violations. *Cf. Coach, Inc. v. Int'l Bazaar Inc.*, 2013 WL 12310712, at *7 (N.D. Tex. June 7, 2013) (citing *Hard Rock Cafe Licensing Corp. v. Concession Servs. Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)) (citing approvingly that there is "no duty to seek out and prevent violations" of trademark infringement in the landlord/tenant context); *Rolex Watch USA, Inc.*, 158 F.3d at 828 (noting that large sales to specific buyers and control over buyers' usage of goods purchased may demonstrate knowledge of others' infringing activity). While Magee asserts that he alerted Nike to potential infringing conduct by HLBA, Magee does not allege he had any similar communications with Nike regarding BSN Sports's conduct. Without any support for his allegations that Nike knew of BSN Sports's alleged infringing conduct, Magee's claim for contributory infringement against Nike relating to BSN Sports's

15

usage of the "HOOPLIFE" mark fails, and the Court should grant Nike's motion on these grounds.

      D. <u>Leave to Amend</u>

As discussed above, Magee filed, without leave of Court, numerous amendments to his Complaint. His complaints regurgitate the same facts and claims against Nike, and the Court has already given Magee "a full and fair opportunity to plead his best case," noting that it would "allow no further amendments." FCR 17 (ECF No. 73); *see Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("[J]udges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992)). Allowing another amendment would delay this case even after closure of discovery and would prejudice Nike by subjecting it to further litigation. Thus, the Court should dismiss Magee's claims with prejudice.

## Recommendation

For the reasons stated, Nike's Motion to Dismiss should be GRANTED. The Court should DISMISS all of Magee's claims with prejudice.

**SO RECOMMENDED.**

April 24, 2023.

                                                                          _____
                                                                        REBECCA RUTHERFORD
                                                                        UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).